**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENDA M. BURNEY,** | : | |
| | : | **Civil No. 07-CV-1454** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF REVENUE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

### I.     INTRODUCTION

Pending before the Court is Defendants' motion for summary judgment on Plaintiff's claims that the termination of her probationary part-time employment with the Pennsylvania Department of Revenue ("Revenue") constituted unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Fourteenth Amendment to the United States Constitution. Plaintiff also claims that her discharge from employment constituted a violation of the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA").

On August 6, 2008, Magistrate Judge Smyser issued a report and recommendation in which he found that there remain disputed issues of fact regarding whether Defendants' proffered non-discriminatory reasons for terminating Plaintiff's employment were pretextual, and, accordingly, the Magistrate Judge recommended that the Court deny Defendants' motion for summary judgment.[1] Defendants filed objections to the report and recommendation, together

---

[1] Magistrate Judge Smyser also found that there exist disputed issues of material fact with respect to whether Plaintiff was qualified for the employment position in question. Defendants have conceded this issue solely for purposes of summary judgment and the Court

with a supporting brief. Plaintiff filed a brief in opposition to Defendants' objections.

Following a full review of the pending motion, the report and recommendation, Defendants'

objections thereto, and the evidence of record, the Court agrees that there remain disputed facts

in the record that preclude the entry of summary judgment. Nevertheless, the Court finds the

issue to be very close and explains its decision in further detail below.

## II.    <u>BACKGROUND</u>

The relevant factual background of this action, as supplied by the undisputed facts

provided by the parties, is set forth in detail in the report and recommendation. To provide

context for the Court's opinion, certain of these facts are set forth below.

Plaintiff Brenda Burney, an African American woman, was hired as a permanent part-

time Clerk I by the Commonwealth of Pennsylvania's Department of Revenue ("Revenue"),

effective April 3, 1999. Plaintiff was hired to work in Revenue's Imaging and Document

Division, which processes, controls, and deposits tax payments. Defendant Nancy Hughes, a

white female, was Plaintiff's direct supervisor categorized as a Clerical Supervisor II.

At the time in question, the Imaging and Document Division employed six to eight full-

time employees; four to six part-time employees; and, during tax season, approximately 15

temporary employees who worked only four to six weeks. Between April and September 1999,

the division hired six to eight employees, of whom four to six were hired as "permanent part-

time" employees. Typically, permanent part-time employees worked full-time from January

through June and approximately 10 days per month between July and December. Full-time

employment consisted of working 7.5 hours, Monday through Friday.

therefore finds it unnecessary to review this aspect of the report and recommendation.

New employees in the division begin their employment with a zero balance in all leave categories.  New full-time employees begin to earn leave at the rate of 5% per pay period for sick leave and 2.03 hours of annual leave per pay period.  Permanent part-time employees, when working less than full-time, earn a pro-rated amount of leave.  Supervisors maintain records of each employee's use of leave time.

Revenue uses the following designations for time off taken by employees:

A – Annual Leave
P – Personal Leave
S – Sick Leave
SF – Sick Family
S EX – Sick with Doctor's Excuse
EA – Emergency Annual
EP – Emergency Personal
AO – Approved Leave Without Pay
AW – Disapproved Leave Without Pay

In most cases, a doctor's note is required only for absences of three days or more, but when an employee is working during her probationary period it is considered best to provide a doctor's excuse for all sick absences.  Revenue supervisors are directed to review sick leave usage and if a pattern of abuse is noted, to counsel the employee that a pattern has been observed and that if improvement is not shown, disciplinary action may be taken.

Employees must pre-schedule annual and personal leave with their employer.  Full-time and permanent part-time employees are permitted four absences for emergencies per calendar year.  Emergency leave is to be used when an employee has no control over the situation that necessitates an absence from work.

Pursuant to a union contract, new Revenue employees are on probation for a period of 180 days.  During this time, if a probationary employee appears to be having difficulty with

attendance or job performance, an interim evaluation will be provided to inform the employee of the problems and to afford the employee an opportunity to improve. These interim evaluations typically are conducted approximately three months into the probationary period. Interim evaluations are not provided for employees who do not exhibit performance or attendance problems during their probationary periods. Probationary employees who receive interim evaluations almost always improve following their review.

Plaintiff began work as a permanent part-time employee with the Imaging and Document Division on April 5, 1999, and was assigned to the proof unit. Also on or about April 5, 1999, Mollie Rossi, a Caucasian woman hired as a permanent part-time employee, was assigned to work in the division's proof unit. After Plaintiff's hire, Defendant Hughes reviewed with her a comprehensive employee orientation checklist and reviewed Revenue's job standards, work objectives, the performance review process, and the attendance policy, including: punctuality; leave requests; reporting off; and the critical nature of the probationary period.

At least initially, both Plaintiff and Rossi were assigned to perform identical work under Defendant Hughes's supervision. Plaintiff's work required her to key in dollar amounts from tax returns and balance checks with tax returns by entering a taxpayer's social security number and the taxpayer's initials. Plaintiff believed that her job was simple and not challenging.

Notwithstanding her opinion that the work she was hired to perform was simple and that the job was so "[m]ediocre" that she "could train [her] seven year old grandson to do it," Plaintiff actually had considerable difficulty meeting her employer's expectations. (Doc. No. 23, Exhibits to Defendant's Statement of Material Facts, Ex. B, Testimony of Brenda G. Burney before Pennsylvania Human Relations Commission at 114) (hereafter, "PHRA Transcript ___".)

Between April 5, 1999, and August 10, 1999, Plaintiff's average PC entry was 1324.[2]  The standard PC entry that employees were expected to attain was 1800.  Additionally, Plaintiff's average paperwork e-voucher was 213 per hour, whereas the standard for paperwork e-voucher was 450 per hour.

Plaintiff also had difficulty adhering to the leave system during her probationary period. Between April 5, 1999, and August 10, 1999, Plaintiff used the following leave:

| | | |
|---|---|---|
| April 19 | 7.5 hours | AO |
| April 21 | 1.0 hours | AO |
| April 26 | 1.75 hours | AW |
| May 7 | .08 hours | EA |
| May 10 | 7.5 hours | EP |
| May 13 | 1.5 hours | A |
| May 28 | 3.0 hours | A |
| June 7 | 7.5 hours | Sick |
| June 29 | 2.0 hours | Sick |
| June 8 | 4.0 hours | Sick |
| July 12 | 7.5 hours | Sick |
| July 19 | 7.5 hours | A |
| July 20 | 4.39 hours | A |
| | 3.11 hours | AW |
| July 21 | 7.5 hours | AW |
| July 22 | 7.5 hours | AW |

(Statement of Material Facts ¶ 57.)  Notably, the above schedule of absences reveals four separate entries or periods of time during which Plaintiff has absent from work without approval.

Mollie Rossi also exhibited difficulty meeting the standard requirements for the job: her PC entry was 1107, far below the 1800 standard, and her paperwork e-voucher input averaged only 121 per hour.  In comparison to Plaintiff's use of the leave system, Rossi used the following leave between April 5, 1999, and August 10, 1999:

---

[2]  It is not clear from the record what unit of measurement (e.g., entries per day, entries per week) is used in calculating PC entry.

| | | |
|---|---|---|
| April 19 | 7.5 hours | AO |
| April 26 | 3.75 hours | EX-SF |
| | 3.75 hours | AO |
| April 28 | 7.5 hours | EX-AO |
| May 6 | 7.5 hours | A/EX- |
| May 24 | 1.33 hours | Sick |
| June 4 | 7.5 hours | Sick |
| June 7 | 4.0 hours | Sick |
| June 8 | 1.5 hours | Sick |
| June 16 | .03 hours | EA |
| June 17 | .03 hours | EA |
| June 22 | 2.0 hours | Sick |
| July 2 | 1.0 hours | A |
| August 9 | 7.5 hours | A |

(Defendant's Statement of Material Facts ¶ 58.)

The record shows that Plaintiff and Rossi were both given interim evaluations on August 10, 1999, to address the shortcomings in their work and attendance. In her review, Plaintiff was rated "satisfactory" in four categories and "unsatisfactory" – the lowest possible rating – in the categories of "work results" and "work habits." Plaintiff's unsatisfactory review in work results stemmed from her low productivity on both her PC count and paperwork e-voucher. Plaintiff's unsatisfactory review in work habits was due to her excessive numbers of absences, including several instances of unauthorized and disapproved leave without pay.[3] Defendant Hughes reviewed each interim evaluation category with Plaintiff and told her that she believed Plaintiff could successfully complete her probationary period. Plaintiff signed the interim evaluation attesting that she agreed with the review.

Rossi was also provided with an interim evaluation in August 1999. During this review, Rossi was found to be "unsatisfactory" in her work results and was rated "needs improvement"

---

[3] The interim evaluation also reflects that Plaintiff had been counseled on three prior occasions about her use of the leave system.

in the area of work habits – one grade higher than "unsatisfactory." In all other categories, Rossi was – like Plaintiff – deemed satisfactory.

Following the interim evaluations, Defendant Hughes offered Plaintiff and Rossi the opportunity to use a process known as the "key-ahead" system that helps some employees increase their computer productivity. Plaintiff rejected Hughes's offer to use the key-ahead system, whereas Rossi tried it.[4]

Following Plaintiff's interim review, her work productivity actually declined. In the graded category of PC entry, Plaintiff's count averaged 1317 per hour, a 2% drop from her August interim evaluation. With respect to her e-voucher productivity, Plaintiff's statistics fell by 4%. In contrast, Mollie Rossi's PC entry increased by 12%, averaging 1864 – above the 1800 standard.

In the area of work habits, it was noted that Plaintiff used the following leave after her August 10, 1999 interim evaluation:

| | | |
|---|---|---|
| August 16 | 7.5 hours | Sick |
| August 24 | 1.5 hours | Personal |
| August 25 | .05 hours | EA |
| August 27 | 2.0 hours | Personal |
| September 20 | 4.0 hours | Sick |

In contrast, following her interim evaluation Mollie Rossie used the following leave:

| | | |
|---|---|---|
| August 13 | 1.17 hours | Sick |

---

[4] At various places in her testimony before the PHRC, Plaintiff gave differing accounts on this point. Plaintiff indicated in her testimony that Defendant Hughes did not offer Plaintiff the opportunity to use the key-ahead process. However, upon cross examination, Plaintiff conceded that she had previously submitted a document to the PHRC in which she stated that "Nancy [Hughes] asked me if I wanted my key-ahead up, and I said no." (PHRC Transcript at 123.) Plaintiff attempted to qualify this answer by testifying that she declined this offer because Defendant Hughes "never explained . . . what [key-ahead] was." (Id.)

| August 18 | 4.75 hours | Sick |
| August 27 | 2.0 hours | A |

On August 17, 1999, Defendant Hughes counseled Plaintiff about suspected sick-leave abuse. In particular, Defendant Hughes noted that Plaintiff had called off sick on three full Mondays during her probationary period, on June 7, July 12, and August 16. Additionally, Plaintiff used emergency leave on three occasions: May 7, May 10, and August 25. Mollie Rossi was counseled about her use of two emergency leaves on June 16 and June 17.

In her September 1999 review, Plaintiff's overall rating remained "unsatisfactory." As a result, Defendant Hughes discussed Plaintiff's record with Revenue's Human Resources department, and it was recommended that Plaintiff be dismissed from her employment. Thereafter, Plaintiff was discharged from her employment on September 22, 1999. Following her review in September 1999, Mollie Rossi was rated overall as "satisfactory" and was retained as an employee.

## III.  STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. Id. The inquiry is whether the evidence presents a

sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint.  Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  The evidence must be viewed in the light most favorable to the nonmovant.  See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

IV.    **DISCUSSION**

In order to establish a prima facie case of discriminatory discharge from employment, a

Title VII plaintiff must show (1) that she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimately filled by a person not of the protected class.  See, e.g., Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996).  If a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  An employer satisfies this burden if it introduces evidence that would permit a fact finder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision. Id.  Once the employer meets this burden, the burden of production returns to the plaintiff to point to some evidence, direct or circumstantial, from which a fact finder would reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  Id. at 764.  To satisfy this burden, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reasons that a reasonable fact finder could rationally find the proffered reasons unworthy of credence and infer that the employer did not act for the reasons asserted.  Id. at 765.

For purposes of their summary judgment motion only, Defendants concede that Plaintiff has established a prima facie case of employment discrimination on the basis of race.  (Doc. No. 29, at 3.)  It is also undisputed that Defendants have proffered legitimate, non-discriminatory reasons for Plaintiff's termination: namely, that Plaintiff's work performance and work habits were unacceptable.  The only issue presently in dispute is whether Plaintiff presented sufficient evidence that Defendants' proffered non-discriminatory reasons were, in fact, pretextual.

Defendants contend that Plaintiff failed to identify genuine issues of fact to show pretext and that Magistrate Judge Smyser erred in concluding that a genuine dispute exists on this issue.

Plaintiff has identified three reasons that she believes constitute sufficient grounds for a fact finder to conclude that Defendants' stated reasons for her dismissal were pretextual. First, Plaintiff contends that numerous co-workers informed her that Nancy Hughes would terminate her employment prior to the conclusion of her probationary period, allegedly for racially discriminatory reasons. Second, Plaintiff argues that because Nancy Hughes was involved in the termination of two other black permanent part-time employees, but was not involved in the termination of any white employees, this evidence is sufficient to demonstrate pretext. Finally, Plaintiff asserts that Defendants treated one similarly situated white employee, Mollie Rossi, more favorably than Plaintiff and that this fact is sufficient to show pretext. The Court will address separately each of Plaintiff's offered bases for a finding of pretext.

### A.      Other Employees' Statements to Plaintiff

Despite the events in this case having occurred approximately one decade ago, Plaintiff has at no time obtained an affidavit or other statement from _any_ co-worker or other person who allegedly told her that she was not likely to pass her probationary period under Defendant Hughes's supervision, less any statement from one of these employees that Hughes was discriminatory. Review of the record reveals that Plaintiff similarly failed to produce any evidence to support this allegation during her proceedings before the Pennsylvania Human Relations Commission. It thus appears that Plaintiff has at no time obtained – by subpoena or any other means – testimony from any former employee who could substantiate this contention.

It is difficult to square this total absence of admissible evidence against Plaintiff's sworn

testimony before the PHRC that it was a "known fact" that "a whole various amount of people that worked in the whole building" apparently knew that black employees had little chance of surviving their probationary period under Nancy Hughes's supervision. (Doc. No. 21-3, at 98.) Indeed, Plaintiff actually named several employees who allegedly had this knowledge or informed her that Defendant Hughes was discriminatory. (Id. at 97.) Yet at no time during this action or during the administrative proceedings before the PHRC has Plaintiff secured any statement from any of these persons attesting to her own representation of this "fact." The Court finds Plaintiff's contention to be no more than a self-serving, conclusory statement bereft of any evidentiary value; indeed, Plaintiff's testimony on this subject is clearly hearsay as it is being offered for the truth of the matter asserted.[5] See Fed. R. Evid. 801(c); see also Fed. R. Evid. 802 (providing general rule that hearsay is not admissible); Blackburn v. UPS, Inc., 179 F.3d 81, 103 (3d Cir. 1999) (hearsay should not be considered evidence of pretext on summary judgment). The Court agrees with Defendants that Plaintiff's own unsupported allegation that other employees told her that Nancy Hughes would likely terminate her prior to the end of her probationary period is, alone or coupled with other evidence, inadequate to show pretext.

**B.     Evidence Regarding Other Terminated Employees**

---

[5] It is also, frankly, troubling that Plaintiff's counsel would help advance such a serious accusation but identify absolutely no evidence to substantiate the charge. This is particularly so given that Plaintiff's current lawyer has been involved in this case for a substantial amount of time, and where Plaintiff's former counsel acknowledged his failure to subpoena witnesses to testify to this very issue in the PHRC proceedings. (PHRC Transcript at 195.) Indeed, Plaintiff's former counsel acknowledged to the PHRC panel that he should have had the PHRC issue a subpoena for a particular witness but failed to do so, and he acknowledged that this was neglect. That "neglect" was acknowledged in December 2005. More than three years later, Plaintiff apparently remains without any evidence to support her allegations regarding out of court statements, yet Plaintiff continues to refer to these unsubstantiated allegations as if they were evidence in support of her claims.

Next, Plaintiff argues that Defendants' proffered non-discriminatory reasons for her own termination could be found pretextual because two other black permanent part-time employees were terminated under Nancy Hughes and because no other white employees were terminated during the period of time that Hughes served in a supervisory capacity. Upon consideration, the Court finds that this evidence is so limited that it cannot form the basis for a finding of pretext.

First, it is undisputed that one of the employees, Tamme Folks, was terminated after Revenue learned that she had failed to disclose a prior retail theft conviction on her pre-employment application. There is no dispute that Revenue maintained a strict policy of not retaining any employee who had been convicted of theft because of the employees' ready access to cash and checks, and there is also no legitimate dispute that Ms. Folks was in fact terminated as a result of her retail theft conviction.[6] The fact that Ms. Folks was terminated as a result of her undisclosed theft conviction is simply not probative on the question of whether Defendants' proffered reasons for terminating <u>Plaintiff's</u> employment were pretextual.

The second employee that Plaintiff identified as having been terminated during her probationary period is Sharee Vasser. Defendants contend, and the record contains evidence showing, that although Nancy Hughes found Ms. Vasser to have good work results, she had been found by Revenue's Human Resources department to have problems attending work and that she

---

[6] Although Plaintiff dismisses the sworn testimony as merely "self serving," Nancy Hughes testified that she found both Folks and Vasser to be good employees and she would not have terminated either woman's employment had the decision been up to her. Plaintiff offers nothing to refute Ms. Hughes's testimony on this point. The record reveals that the decision to terminate these two employees was outside of Ms. Hughes's individual control and thus is not relevant to show that the proffered non-discriminatory reasons for terminating Plaintiff's employment were pretextual. Other than to state the fact that both Folks and Vasser are African American, Plaintiff offers nothing even to suggest that the termination of either woman was motivated in any way by racial animus.

otherwise abused the leave system. Nothing in the record shows that Nancy Hughes had meaningful influence over the decision to terminate Ms. Vasser's employment with Revenue. Upon consideration, the Court finds that these two isolated instances of other African American employees being terminated after working under Nancy Hughes during their probationary periods do not provide evidence relevant to show that Defendants' proffered non-discriminatory reasons for terminating Plaintiff's employment were pretextual. Again, other than to identify each of these employees as African American, Plaintiff provides no evidence to contradict or cast doubt upon Defendants' evidence that these employees were terminated for entirely legitimate reasons. The Court's finding in this regard is bolstered by the uncontradicted evidence in the record that no other black employees had complained, formally or otherwise, that Ms. Hughes treated them in a discriminatory manner. (Defendants' Statement of Materials Facts ¶ 92; Plaintiff's Answer to Defendants' Statement of Material Facts ¶ 92.) Accordingly, the Court finds that Plaintiff's assertion that Defendant Hughes had terminated two African American employees but no white employees does not satisfy her burden of pointing to evidence from which a fact finder could find pretext.

### C. Mollie Rossi Was Not Terminated

This leaves Plaintiff with a single basis for a finding of pretext necessary to survive Defendants' motion for summary judgment: namely, that she was terminated by Revenue while Mollie Rossi, a white employee whom Plaintiff contends was similarly situated, was not. Defendants argue that Magistrate Judge Smyser erred in finding that genuine issues of disputed fact existed to deny summary judgment on this ground.

In his report, Magistrate Judge Smyser framed the issues and the evidence relevant to

Mollie Rossi as follows:

> The plaintiff advances as a reason for finding pretext that the plaintiff had similar work results as compared to Mollie Rossi, the parallel track Caucasian, but yet had lower evaluations. The defendants observe, however, that Rossi was improving and that the plaintiff was not improving. They observe also, that the final dismissal-precipitating event preceding the plaintiff's termination was her poor work results and poor work habits as reflected in a large number of absences including disapproved leave.

(Doc. No. 27, at 24.) After identifying the issues in this way, the report and recommendation immediately proceeds to conclude that "[t]here is a genuine dispute of fact as to the issue [of] whether the dismissal of the plaintiff from her probationary position was a pretext for racial discrimination." (Id. at 24-25.) However, the report does not identify which issues of fact remain in dispute. Having already rejected two of the three grounds Plaintiff offered to show pretext, the Court finds it necessary to examine with more careful scrutiny the last remaining issue regarding Defendants' allegedly disparate treatment of Mollie Rossi and Plaintiff.

The undisputed facts show that both Plaintiff and Rossi began working in April 1999 as permanent part-time Clerks I with Revenue's Imaging and Document Division, both were assigned to perform identical work, and both were supervised by Nancy Hughes. Also undisputed is the fact that Plaintiff and Rossi were given interim evaluations on or about August 10, 1999, and both evaluations were identical in four categories. (Defendant's Statement of Material Facts ¶ 45.) In their interim evaluations, both women were rated as "unsatisfactory" in "work results" – the lowest possible rating. Plaintiff and Rossi were graded as unsatisfactory in this category because they both fell significantly below the standard PC entry target of 1800 that was used to measure their monthly production: Plaintiff's average PC entry was 1324 whereas Rossi's was even lower at 1107.

With respect to their evaluations for "work habits" – which depends heavily on how much time a probationary employee was out of work during the review period, and otherwise how the employee adhered to Revenue's leave system – Rossi was rated "needs improvement" whereas Plaintiff was rated "unsatisfactory."  Although Plaintiff insists that there could be no legitimate basis to classify the women differently because they both missed "the exact same number of days" during the interim evaluation period (Doc. No. 24, at 8), review of the record shows that Plaintiff and Rossi used the leave system differently and in important ways.  Most notably, it is undisputed that on three separate occasions during the interim review period, Plaintiff incurred disapproved leave without pay.  Moreover, Plaintiff elected not to go to work during these days even after she had been counseled that she could not take the time off work and that her services were needed because the division was entering a peak period of the year.[7] During her probationary period, Plaintiff was also counseled on multiple occasions regarding suspected sick leave abuse and her use of emergency leave.  Although both women had difficulty complying with the leave policy, the differences in their use of leave and, importantly, their use of the leave system following their interim evaluations in August 1999, shows that Plaintiff and Rossi were not similarly situated.  Defendants have identified legitimate reasons for grading

---

[7]  During her proceedings before the PHRC, Plaintiff was asked why she took time off of work to attend a conference when she had no authorized leave time, and she answered, "Why not go?  There was no work to be done."  (PHRC Transcript at 120.)  When counsel for Revenue suggested that one reason might be that Plaintiff was still employed and was being paid to show up to work, Plaintiff responded, "So I took a day without pay.  What's wrong with that?"  (Id.)  The record shows that Plaintiff did not have a day of leave to take, yet she elected to skip work anyway.  Furthermore, Plaintiff did not take a single day off work, but rather she took two and one-half days when she had no time to take and when she had been told that her absence would not be approved.  The record provides virtually no support for Plaintiff's casual assertion that there was "no work" to be done during the time in question.

Plaintiff's and Rossi's work habits differently during both the interim evaluations and in the subsequent September review, and the undisputed facts support Defendants' asserted reasons for the difference in the reviews.  Accordingly, the Court does not find that the difference between the grades given to Plaintiff and Rossi for their "work habits" supplies relevant evidence to show that Defendants' proffered reasons for Plaintiff's ultimate dismissal were pretextual.

Having found that none of the foregoing arguments or evidence provides a sufficient showing of pretext to defeat Defendants' motion for summary judgment, the Court turns to the disparate evaluations that Plaintiff and Mollie Rossi received for their work results and, ultimately, to the Defendants' eventual decision to terminate Plaintiff's employment while retaining Rossi.

Defendants argue that Mollie Rossi's work results improved during the probationary period and, specifically, following her interim review and that this improvement accounts for her being graded overall as "satisfactory."   In contrast, Defendants emphasize that Plaintiff's work results actually declined over the course of the probationary period and that this decline supports the conclusion that Plaintiff's overall work results and employment performance was "unsatisfactory."  Defendants maintain that these differences provide a reasonable basis for Defendants to have terminated Plaintiff and continued Rossi's employment.

The record clearly contains evidence supporting Defendants' point regarding Plaintiff's and Rossi's work results, and the record would support a finding that the sharp contrast in their work performance following the interim evaluations was the basis for Plaintiff's eventual discharge.  Plaintiff, however, contends that the disparity in the two women's work performance was actually attributable to the following two facts:  (1) Hughes explained to Rossi – but not to

Plaintiff – how to utilize the key-ahead process and provided her with meaningful training in the use of the process, thus enabling Rossi to improve her work results; and (2) Plaintiff was often loaned out to assist other departments, whereas Rossi was not, thereby affording Rossi a substantially greater opportunity to improve her work results while Plaintiff was not provided with a similar opportunity. Plaintiff points to examples of her own testimony in the record in support of both of these contentions.[8] Defendants elected not to respond to either of Plaintiff's arguments in a reply brief. Upon careful consideration, the Court concludes that Plaintiff theoretically may be able to demonstrate that Defendants' proffered reasons were pretextual if she can establish that Defendants were attentive to and focused on Rossi's training and improvement at the same time they were excluding Plaintiff from benefitting from such training and work opportunities.[9]

---

[8] The evidence in support of these arguments is extremely limited and stems entirely from her own testimony. It also bears mention that the evidence Plaintiff has identified in support of these assertions was roundly criticized and ultimately rejected by the three-commissioner panel of the PHRC that previously considered her claims. At various points in the PHRC's opinion, the panel declared that Plaintiff's testimony was "patently absurd," (Doc. No. 23, Ex. O, PHRC Decision Dated April 25, 2006, at 23), "unreliable," (id. at 22), "self-contradictory," (Op. at 23), and "questionable," (id. at 24). Indeed, following a discussion of nine separate reasons that caused the panel to conclude "that Burney lacks credibility," the panel made the stinging observation that "[o]nce again, Burney's self-contradictory testimony reveals quite clearly that Burney was simply making it up as she went along." (Id. at 25.) Although the Court has found it necessary to review the entire record in adjudicating the pending motion for summary judgment, including the adverse findings of the PHRC with respect to Plaintiff's evidence, the Court has studiously avoided making credibility determinations and has refrained from substituting itself as a fact finder in this case. Nevertheless, the Court recognizes that Plaintiff's evidence in support of her pretext argument is especially limited.

[9] Although it does not affect the decision in this case, the Court found it curious in reviewing the record that a probationary employee who was having clear difficulty meeting the employer's production standards would be permitted to choose whether to utilize a program that had been shown to increase work output, or to choose whether or not to be trained in such a program. Nevertheless, nothing in the record suggests that the decision to give employees these

In their opening brief, Defendants urge the Court not to allow Plaintiff to rely on a comparison between herself and a single white employee for purposes of prosecuting her discrimination claims.  In support of this argument, Defendants cite to a decision from the United States Court of Appeals for the Third Circuit in which the court quoted another appellate court's finding that "a black plaintiff cannot establish racial discrimination by singling out one white person who was treated more favorably when there were other white persons who were treated less favorably than other black persons."  Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998) (quoting Bush v. Commonwealth Edison Co., 990 F.2d 928, 931 (7th Cir. 1993)).  Defendants also quote a passage from Simpson in which they contend that the Third Circuit expanded upon this principle by stating:

> [T]o hold otherwise would be to permit the inference of discrimination anytime a single member of a non-protected group was allegedly treated more favorably than one member of the protected group regardless of how many other members of the non-protected group were treated equally or less favorably.
>
> Comparison to one other employee may support an inference of discrimination at the prima facie stage of the discrimination inquiry, but more is required to establish pretext.

(Doc. No. 29, at 9) (quoting Simpson, 142 F.3d at 646).  Upon review of the cited authority, the Court finds that the second part of this quotation is actually not part of the Third Circuit's opinion but is instead the lesson of Simpson as interpreted by the United States District Court for the District of Delaware in Blackshear v. City of Wilmington, 15 F. Supp. 2d 417, 429-30 (D. Del. 1998).  The Simpson court did provide the first part of the quotation but not the second.  As

---

choices is discriminatory, and the Court thus finds it inappropriate to consider the employer's business judgment in this regard for purposes of deciding the pending motion.  See, e.g., Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992).

Plaintiff notes, <u>Simpson</u> and the decision of the Seventh Circuit that it follows both involved situations where a plaintiff not only relied upon comparison with a single other employee but also ignored that other non-protected employees were treated equally or less favorably. This second factor is entirely absent from the instant case, at least on the record provided. Although the Court finds that this presents a very close case given the paucity of evidence Plaintiff has assembled, the Court does not find that <u>Simpson</u> mandates that Defendants must prevail on their pretext argument.

The Court has reviewed the record with care. As noted above, the Court finds that most of Plaintiff's assertions with respect to pretext either are unpersuasive or have no evidentiary support and are therefore rejected. The Court also finds that the evidence Plaintiff has submitted regarding the different treatment of Plaintiff and Mollie Rossi is largely unpersuasive. In this regard, the Court rejects Plaintiff's assertion that Defendants have failed to justify evaluating the two women differently with respect to their work habits because the record plainly shows a meaningful difference in their respective performance in this category. Similarly, the record shows material differences in the two women's work productivity – the so-called "work results." The Court recognizes that although Plaintiff initially outperformed Rossi (albeit below Revenue's standards for productivity), Rossi later improved whereas Plaintiff regressed. However, Plaintiff has identified disputed issues of fact in the record regarding whether Plaintiff was afforded a comparable opportunity to improve her work results, including testimony that following her interim evaluation she spent a very considerable amount of time being loaned to other departments and engaging in menial tasks that gave her no chance to improve her scores. The Court acknowledges that this evidence is very limited, is essentially self-serving, and is not

only contradicted by other evidence in the record but was previously discredited by a panel of the PHRC. These factors make the Court's finding difficult, but the Court ultimately concludes that Defendants' motion for summary judgment should be denied because Plaintiff has come forward with some evidence from which a fact finder could potentially find Defendants' proffered non-discriminatory reasons for her termination to have been pretextual.

**V.      CONCLUSION**

Upon careful consideration of Defendants' motion for summary judgment and the evidence submitted by the parties, Magistrate Judge Smyser's report and recommendation, Defendants' objections thereto, and Plaintiff's response, and for the reasons set forth above, the Court concludes that Defendants' motion for summary judgment should be denied. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENDA M. BURNEY,** | : | |
| | : | **Civil No. 07-CV-1454** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF REVENUE, <u>et</u> <u>al.</u>,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 29th day of June 2009, upon consideration of Defendants' motion for summary judgment on Plaintiff's claims of employment discrimination; and following <u>de</u> <u>novo</u> review of the review and recommendation that was issued, as well as Defendants' objections thereto; and for the reasons set forth in the within memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment (Doc. No. 19) is DENIED.

2. The report and recommendation (Doc. No. 27) is ADOPTED for the reasons the Court set forth specifically in the accompanying memorandum.

3. Defendant's objections to the report and recommendation (Doc. No. 28) are OVERRULED.

<u>S/ Yvette Kane</u>
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania